UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
MICHELE A. BAPTISTE,                                              :
:
                      Plaintiff,                   :
:      22-CV-2785 (JMF)
      -v-                                                         :
:      OPINION AND ORDER
THE CITY UNIVERSITY OF NEW YORK et al.,                           :
:
                      Defendant.                   :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Michele A. Baptiste, a former administrator at the City College of New York ("CCNY"), a senior college in the federally funded City University of New York ("CUNY") system, sues CCNY's president, Vincent Boudreau, and CUNY for employment discrimination and retaliation. More specifically, Baptiste brings claims against one or both Defendants for race discrimination and retaliation, under the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, the Equal Protection Clause of the Fourteenth Amendment; Section 1981 of the Civil Rights Act of 1871 ("Section 1981"), 42 U.S.C. § 1981; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

       The following facts, drawn from the Second Amended Complaint (the "Complaint"), ECF No. 18 ("SAC"), are assumed to be true for purposes of this motion and construed in the

light most favorable to Baptiste.  *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

CUNY is a publicly funded university system that receives federal financial assistance.  SAC ¶¶ 21, 22.  CCNY is one of the senior colleges within CUNY.  *Id.* ¶ 21.  Baptiste, a Black woman, worked as CCNY's Chief Diversity Officer, Dean of Faculty Relations, Compliance, Title IX Coordinator, and ADA/504 Coordinator from 2013 to 2018.  *Id.* ¶¶ 19, 24, 27, 105.  As relevant here, her duties included reviewing reasonable accommodation requests and investigating internal discrimination complaints.  *Id.* ¶¶ 30-31.

In September 2014, Lynda Dodd, a professor at CCNY's Colin Powell School, requested additional time to fulfill her tenure requirements because she was suffering from progressive multiple sclerosis.  *Id.* ¶¶ 36-37.  Bruce Cronin, as Dodd's immediate supervisor, and Boudreau, then the Colin Powell School's Dean, rejected Dodd's request.  Cronin and Boudreau also informed Dodd that they would vote against her reappointment as a professor for the upcoming academic year and that she would be removed from the tenure track.  *Id.* ¶¶ 37-38.  After an appeal and investigation led by Baptiste, the then-president of CCNY personally intervened to reappoint Dodd as a professor and to reinstate her tenure benefits.  *Id.* ¶¶ 41-43, 46.

Days after this successful appeal, Cronin and Boudreau changed Dodd's teaching schedule to double her in-class time.  In response, Dodd filed a complaint with Baptiste, alleging that Cronin and Boudreau had discriminated against her on the basis of disability and retaliated against her for appealing their earlier decisions to the CCNY president.  *Id.* ¶¶ 47-48.  Baptiste investigated the complaint and concluded that Boudreau "was complicit in the retaliation against Dr. Dodd."  *Id.* ¶ 50.  As a result of Baptiste's conclusion and recommendations, Boudreau was formally reprimanded and a letter of reprimand was added to his personnel file.  *Id.* ¶¶ 51-56.

In or about November 2016, Boudreau was appointed interim president of CCNY. *Id.* ¶ 59. As interim president, he disbanded a CCNY committee focused on recruiting and retaining minorities as employees at the college. *Id.* ¶¶ 68, 70. He also limited the amount of contact Baptiste had with his office and reduced her department's staffing. *Id.* ¶¶ 76-78, 85. In January 2018, a little more than one year after Boudreau's appointment as interim president, David Rias, an Afro-Latino employee at CCNY's Office of Public Safety, filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that his coworkers at the Office of Public Safety had repeatedly called him racist epithets and subjected him to a hostile work environment. *Id.* ¶¶ 86-89, 91. But even after the charge was filed, CUNY did little to investigate Rias's claims and he continued to face harassment. *Id.* ¶ 93. As a result of the continued harassment, Rias eventually suffered a medical emergency at work and filed a reasonable accommodation request with Baptiste's office. *Id.* ¶¶ 94-96.

Shortly after the request was filed, Boudreau called a meeting with Baptiste and other officials; throughout the meeting, he fumed at how Rias had filed a discrimination charge and reasonable accommodation request and sought "retribution" against him for doing so. *Id.* ¶¶ 97-99. Significantly, Baptiste "expressly objected" to Boudreau's threats against Rias and informed him that she would investigate Rias's request. *Id.* ¶ 100. After her investigation, Baptiste concluded that Rias's reasonable accommodation request should be granted and that denying it would be unlawful. *Id.* ¶ 102. On April 25, 2018, Baptiste shared her conclusion and recommendation with Boudreau. *Id.* ¶ 103. The very next day, on April 26, 2018, Boudreau unceremoniously terminated Baptiste. *Id.* ¶¶ 104-09.

Baptiste was replaced on an interim basis with a white woman who "had absolutely no prior experience in Diversity and Inclusion." *Id.* ¶¶ 118-19. Meanwhile, CUNY created a search

committee to find a permanent candidate to fill Baptiste's role. *Id.* ¶ 121. After a nationwide search, the committee presented three qualified people of color as candidates to Boudreau. *Id.* ¶ 122. Boudreau rejected all of the candidates, however, and ended up appointing another white woman "with no formal experience in Diversity & Inclusion" to replace Baptiste. *Id.* ¶¶ 123-24.

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). A court will not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) — that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

As noted, Baptiste brings discrimination and retaliation claims under various statutes. The Court will begin with her discrimination claims and then turn to her retaliation claims.

### A. Discrimination Claims

Baptiste's race discrimination claims are brought under Section 1981, the NYSHRL, and the NYCHRL. Her Section 1981 and NYSHRL claims are analyzed under the well-known three-step burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Cunningham v. N.Y. Junior Tennis League, Inc.*, No. 18-CV-1743 (JMF), 2020 WL 916964, at *3 (S.D.N.Y. Feb. 26, 2020). At the motion-to-dismiss stage, however, only the first step — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue. *See Littlejohn*, 795 F.3d at 311; *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of discrimination under Section 1981 and the NYSHRL, Baptiste must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question, or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination. *See, e.g.*, *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014).[1] The showing required for a *prima*

---

[1] To be more precise: In the case of Section 1981, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (rejecting "the motivating factor test" for Section 1981 claims). In addition, New York amended the NYSHRL in 2019 to "be construed liberally," N.Y. Exec. Law § 300, a change that courts have interpreted to bring the NYSHRL more into line with the NYCHRL (discussed immediately below), *see Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order). But the 2019 amendments to the NYSHRL do not apply to Baptiste's claims, which are based on conduct that occurred before the amendments' effective date of August 12, 2019. *See, e.g.*, *McHenry v. Fox News Net., LLC*, 510 F. Supp. 3d 51, 68-69 (S.D.N.Y. 2020) (citing cases).

5

*facie* NYCHRL claim differs slightly, as a plaintiff need only "establish that she . . . was subject to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic." *Ayers v. Bloomberg, L.P.*, 165 N.Y.S.3d 554, 557 (2d Dep't 2022); *see also, e.g.*, *Cooper*, 2023 WL 3882977, at *2 (noting that "[c]laims under the NYCHRL" should be "analyzed separately and independently" (internal quotation marks omitted)). That said, an NYCHRL plaintiff must still allege facts supporting an inference of discrimination. *Cooper*, 2023 WL 3882977, at *3; *see, e.g.*, *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-CIV-12137 (JPC), 2023 WL 2745556, at *16 (S.D.N.Y. Mar. 31, 2023); *accord Littlejohn*, 795 F.3d at 311.

  Measured against these standards, Baptiste's claims of racial discrimination fall short because she fails to establish even a "minimal inference" of discrimination. Baptiste's principal argument rests on the fact that, after she was terminated, she was replaced by white women on an interim, and then permanent, basis. *See* SAC ¶¶ 118, 124. It is true that "an inference of discrimination may arise when an employer replaces a terminated employee with an individual outside the employee's protected class." *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017) (summary order). At the same time, the Second Circuit has cautioned that "courts 'may not consider a particular allegation in isolation,' and that the inference of discrimination to be drawn from an allegation that plaintiff was replaced by someone outside his protected class can be diminished by other allegations in the complaint." *Mansaray v. Kraus Sec. Sys.*, No. 20-CV-1415 (RA), 2021 WL 183275, at *4 (S.D.N.Y. Jan. 19, 2021) (quoting *Franchino*, 692 F. App'x at 43). Here, any such inference is not merely diminished by the other allegations in Baptiste's Complaint; it is actually "undercut." *Franchino*, 692 F. App'x at 43; *accord Mansaray*, 2021 WL 183275, at *4.

6

Indeed, Baptiste's conclusory assertions of race discrimination aside, the entire theory of her case is that Boudreau acted vindictively toward her based on her role in reprimanding him after the Dodd investigation and speaking out against him during the Rias investigation — not because of any racial animosity he may have harbored. *See, e.g.*, SAC ¶¶ 3-8, 49-56. Baptiste tries to bolster her case by pointing to the fact that Boudreau disbanded a diversity committee and restructured her office, reducing his communications with her. *See* SAC ¶¶ 68-78; ECF No. 27 ("Pl.'s Opp'n"), at 19-20. But these allegations, coupled with conclusory accusations that Boudreau's conduct was discriminatory, do not support the weight that Baptiste puts on them. *See, e.g.*, *Kalia v. City Univ. of N.Y.*, No. 19-CV-6242 (JMF), 2020 WL 6875173, at *6 (S.D.N.Y. Nov. 23, 2020) (disregarding "conclusory allegations that the school dismantled diversity programs out of racial animus"); *see also, e.g.*, *Zeng v. N.Y.C. Hous. Auth.*, No. 18-CV-12008 (AKH), 2022 WL 37131, at *8 (S.D.N.Y. Jan. 3, 2022) (holding that a "new supervisor . . . is entitled to set his own standards and agenda" (internal quotation marks omitted)); *Davis v. Oyster Bay-E.*, No. 03-CV-1372 (SJF), 2006 WL 657038, at *11 (E.D.N.Y. Mar. 9, 2006) ("The mere fact that [the plaintiff] had a better relationship with . . . previous supervisors does not, on its own, raise an inference of discrimination."), *aff'd*, 220 F. App'x 59 (2d Cir. 2007) (summary order). That leaves only Boudreau's supposed anger at Rias for complaining about racial discrimination. *See* SAC ¶¶ 98-99. But that is not enough to support an inference of discrimination, as opposed to retaliation, against Baptiste. *Cf. Franchino*, 692 F. App'x at 42-43 (holding that, although the plaintiff was replaced by somebody outside of his protected class, the inference of discrimination was defeated because the complaint showed that the defendant discriminated against the plaintiff "because she perceived him as threatening her

continued employment"); *Durden v. MTA*, No. 17-CV-5558 (PAE), 2018 WL 4658806, at *8 (S.D.N.Y. May 18, 2018) (similar), *adopted by* 2018 WL 3360757 (S.D.N.Y. July 10, 2018).

In short, the Complaint does not give rise to a "minimum inference of discrimination" and Baptiste's discrimination claims under Section 1981 and the NYSHRL must be and are dismissed. Baptiste's claim under the NYCHRL presents a closer question, if only because the NYCHRL must be construed "broadly" and "in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011). But even under the NYCHRL's more liberal standards, Baptiste's discrimination claims fail as a matter of law because she does not meet "the burden of showing that the conduct [complained of] is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110; *see also, e.g.*, *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016). Accordingly, Defendants' motion is GRANTED as to Baptiste's discrimination claims in their entirety.

### B. Retaliation Claims

That leaves Baptiste's retaliation claims, which are brought under the Rehabilitation Act, Section 1981 (by way of 42 U.S.C. § 1983), the Equal Protection Clause (also by way of Section 1983), the NYSHRL, and the NYCHRL. As relevant here, to establish a *prima facie* case of retaliation under these statutes, a plaintiff "must show that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection between the alleged adverse action and the protected activity." *Nieblas-Love*, 165 F. Supp. 3d at 69-70 (internal quotation marks omitted) (Section 1981, the NYSHRL, and the NYCHRL); *see Tregila v. Town of Manlius*, 313 F.3d 713,

719 (2d Cir. 2002) (Rehabilitation Act); *Vega*, 801 F.3d at 87-88 (Section 1983).[2] "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Generally, "a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia*, 313 F.3d at 720.

The Court will address Baptiste's claims under each statute in turn.

1. **Rehabilitation Act**

Baptiste brings her Rehabilitation Act retaliation claim against both CUNY and Boudreau. SAC ¶¶ 130-38. But as Defendants argue, *see* ECF No. 23 ("Defs.' Mem."), at 5, and Baptiste concedes, *see* Pl.'s Opp'n 10 n.1, Rehabilitation Act claims cannot be asserted against state officials in their individual capacities, *see, e.g.*, *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022). Accordingly, Baptiste's Rehabilitation Act claim against Boudreau in his *individual* capacity must be and is dismissed. There is some reason to believe that Baptiste's claim against Boudreau in his *official* capacity should suffer the same fate. For one thing, the Second Circuit in *Goe* cited with approval a district court case stating that "it is well-established that there is no individual liability under . . . the Rehabilitation Act, whether the individual is sued in their official or individual capacity." *Goe*, 43 F.4th at 35 (cleaned up) (quoting *Perros v. County of*

---

[2] Although immaterial for present purposes, under the NYCHRL "[a] plaintiff need not prove any adverse employment action; instead, [s]he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Nieblas-Love*, 165 F. Supp. 3d at 70 (internal quotation marks omitted).

9

*Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017)).  For another, courts in this Circuit routinely dismiss Rehabilitation Act claims against individuals in their official capacities as "duplicative" when such claims are also brought against the pertinent state agencies as well.  *See, e.g.*, *Rubin v. N.Y.C. Bd. of Educ.*, No. 20-CV-10208 (LGS), 2023 WL 1972729, at *13 (S.D.N.Y. Jan. 6, 2023), *adopted by* 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023); *Gibbs v. Utilization Rev. Cmte.*, No. 20-CV-1119, 2022 WL 4120770, at *6 (D. Conn. Sept. 8, 2022).  But curiously, Defendants write in their memorandum of law that the Rehabilitation Act claim, "[w]hatever its merits, . . . *can*, indeed, be asserted against . . . Boudreau in his official capacity."  Defs.' Mem. 5 (emphasis added).  Accordingly, Defendants have waived any argument for dismissal on that ground here.

Turning to the merits, the Court can and does swiftly reject Defendants' argument for dismissal.  Notably, Defendants do not dispute that Baptiste engaged in protected activity when she advocated on behalf of Dodd and Rias, that they were aware of these protected activities, or that Baptiste suffered an adverse employment action when she was terminated.  Instead, they challenge only the "causal connection" prong of the retaliation inquiry and, even then, only with respect to Baptiste's protected activity on behalf of Dodd.  *See* Defs.' Mem. 5-6 (arguing only that "the retaliation claim based on plaintiff's advocacy on behalf of Dr. Dodd must be dismissed").  But this challenge misses the mark because a protected activity does not a retaliation claim make; instead, a retaliation claim is rooted in an allegedly adverse employment action.  *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Duplan v. City of New York*, 888 F.3d 612, 625 n.10 (2d Cir. 2018).  In other words, Baptiste's retaliation claim arises out of her termination.  And because that termination occurred only *one day* after she engaged in protected activity (advocating for Rias), SAC ¶¶ 103-04, she plainly states a

10

plausible claim. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (holding that three weeks between the protected activity and the plaintiff being terminated "is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity"); *Adams v. City of New York*, 837 F. Supp. 2d 108, 123 (E.D.N.Y. 2011) ("A single day between protected activity and adverse employment action is certainly so proximate that it demonstrates a causal connection.").

Baptiste's Rehabilitation Act claim thus survives against CUNY and Boudreau in his official capacity.

### 2. Section 1981

Next, Baptiste's Section 1981 retaliation claim — which is brought against Boudreau alone, SAC ¶¶ 148-56 — is also easily upheld. Notably, Defendants' sole argument for dismissal of the claim is that Section 1981 applies only to race-based retaliation, not to disability-based retaliation. *See* Defs.' Mem. 6-9. That is true, *see, e.g.*, *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988), but beside the point because the Complaint alleges race-based retaliation, *see* Pl.'s Opp'n 20-21. The Court would be on firm ground denying Defendants' motion on that ground alone. But, in any event, Baptiste plausibly states a claim of race-based retaliation insofar as she alleges that she "expressly objected" to Boudreau's threats of retaliation against Rias for complaining about racial discrimination. SAC ¶ 100; *see Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (explaining that "protected activities" include "informal protests of discriminatory employment practices, including . . . expressing support of co-workers who have filed formal charges"); *see also, e.g.*, *Cadet v. All. Nursing Staffing of N.Y., Inc.*, — F. Supp. 3d —, 2022 WL 4584246, at *11 (S.D.N.Y. 2022) (explaining that the term "protected activities" in the retaliation context is interpreted broadly, citing cases). Conspicuously,

Defendants do not even attempt to argue otherwise in their reply brief. Accordingly, Baptiste's Section 1981 claim against Boudreau survives.

### 3. The Equal Protection Clause

By contrast, Baptiste's equal protection claim — brought against Boudreau alone pursuant to Section 1983 — fails as a matter of law. The gravamen of that claim is that Boudreau violated her right under the Equal Protection Clause to be free from disability-based retaliation. *See* SAC ¶¶ 140-45. But a Section 1983 claim "may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). And "freedom from discrimination on the basis of disability is a right secured by statute, not by the Constitution." *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) (citations omitted) (citing *Bd. of Trs. of Univ. of Ala v. Garrett*, 531 U.S. 356, 368 (2001)), *abrogated on other grounds by Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020); *see also Chick v. County of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013) (summary order).[3] Thus, courts in this Circuit have long held that "claims of employment discrimination based on disability," including disability-based retaliation claims, "are not cognizable under § 1983." *Bonds v. County of Westchester*, No. 19-CV-1712 (KMK), 2020 WL 4347704, at *8 (S.D.N.Y. July 28, 2020); *see also Dotson v. City of Syracuse*, No. 18-CV-750, 2019 WL 2009076, at *11 (N.D.N.Y. May 7, 2019) ("[T]he courts [in this Circuit] have uniformly held that disability discrimination claims

---

[3] These and some other cases discussed here address disability-based *discrimination*, rather than disability-based *retaliation*, but the Second Circuit has made clear that "retaliation is a form of discrimination." *Vega*, 801 F.3d at 82 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005)); *see also, e.g.*, *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 85-86 (2d Cir. 2016). Accordingly, the Court relies both on cases that discuss disability-based discrimination generally and those that discuss disability-based retaliation specifically.

cannot proceed under Section 1983 because there are specific statutes that provide for such relief."); *Apatow v. Town of Stratford*, — F. Supp. 3d —, 2023 WL 122038, at *3 (D. Conn. 2023) ("The rule barring section 1983 claims arising out of disability discrimination in this context also applies to employment retaliation based on disability." (internal quotation marks omitted)).

Baptiste argues that the Second Circuit's decision in *Vega* "establish[ed] a private right of action [under Section 1983] for retaliation when opposing *any* discrimination." Pl.'s Opp'n 16 (emphasis omitted); *see id.* 16-19. Not so. Although the *Vega* Court held (contrary to at least seven other courts of appeals, *see Wilcox v. Lyons*, 970 F.3d 452, 461-63 (4th Cir. 2020)) that Section 1983 can provide a cause of action for employment retaliation claims based on the Equal Protection Clause, *Vega* involved a claim of discrimination on the basis of race and national origin — which, unlike disability discrimination, involves a suspect class and *is* prohibited by the Fourteenth Amendment. *See Vega*, 801 F.3d at 88-89; *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983). Thus, even after *Vega*, virtually every district court that has considered the question has held that disability-based retaliation claims may not be brought pursuant to Section 1983. *See, e.g.*, *Apatow*, 2023 WL 122038, at *3; *Bonds*, 2020 WL 4347704, at *8; *A.K. v. Westhampton Beach Sch. Dist.*, No. 17-CV-866 (JS), 2019 WL 4736969, at *18 (E.D.N.Y. Sept. 27, 2019); *Dotson*, 2019 WL 2009076, at *11; *Koenig v. City of New Haven*, No. 16-CV-514, 2017 WL 631190, at *12 (D. Conn. Feb. 15, 2017); *see also, e.g.*, *Abbott v. N.Y. State Div. of State Police*, No. 19-CV-1151, 2020 WL 5802236, at *3 (N.D.N.Y. Sept. 29, 2020) (reaching the same conclusion with respect to a claim of disability discrimination); *Gonzalez v. City of New*

*York*, 377 F. Supp. 3d 273, 288 (S.D.N.Y. 2019) (same).[4] The Court follows this overwhelming weight of authority and, thus, dismisses Baptiste's equal protection retaliation claim.

### 4. NYSHRL and NYCHRL

Because the protections afforded by the NYSHRL and the NYCHRL are at least as protective as those guaranteed by the federal antidiscrimination laws, a plaintiff who pleads a *prima facie* case of race-based retaliation under Section 1981 necessarily does so under the state and city laws as well. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (per curiam); *see also, e.g.*, *Denicolo v. Bd. of Educ. of City of N.Y.*, 328 F. Supp. 3d 204, 214 (S.D.N.Y. 2018); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 587, 588 (S.D.N.Y. 2011). That would suggest that Baptiste's retaliation claims against Boudreau under the two statutes should survive.

In response, Defendants argue that Boudreau cannot be held individually liable under the NYSHRL. *See* Defs.' Mem. 12-14. They are correct. Boudreau can be held liable under the state statute only on an aider-and-abettor theory. *See Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 457-59 (2021); *Oluwo v. Sutton*, 170 N.Y.S.3d 177, 179 (2d Dep't 2022); *see also, e.g.*, *Bueno v. Eurostars Hotel Co.*, No. 21-CV-535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan 10, 2022)

---

[4] The one exception the Court has found is *Fierro v. City of New York*, No. 20-CV-9966 (GHW), 2022 WL 428264 (S.D.N.Y. Feb. 10, 2022), on which Baptiste relies, *see* Pl.'s Opp'n 17. But the court in *Fierro* reached its conclusion by (1) distinguishing between *discrimination* and *retaliation*, 2022 WL 428264, at *8; and (2) placing undue weight on the fact that *Vega* did not "expressly limit[] the [retaliation claims it allowed] to categories of protected classifications under the Equal Protection Clause," *id.* But, as noted above, *Vega* explicitly disavowed the first rationale, 801 F.3d at 82, and the second is unconvincing, as it makes little sense to permit disability-based retaliation claims to be brought under Section 1983 but to prohibit the discrimination claims on which those retaliation claims are based. *Cf. Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998) ("[T]o be actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981."). Accordingly, to the extent that *Fierro* interpreted *Vega* to allow disability-based retaliation claims to proceed under Section 1983, the Court declines to follow it.

14

("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct." (citing N.Y. Exec. Law § 296(6))). But "an individual cannot aid and abet his or her own violation" of the statute. *Hardwick v. Auriemma*, 983 N.Y.S.2d 509, 512-13 (1st Dep't 2014); *see also, e.g.*, *Singhal v. Doughnut Plant, Inc.*, No. 20-CV-3295 (ALC), 2022 WL 976885, at *5 (S.D.N.Y. Mar. 31, 2022) ("Under the NYSHRL . . . [an] individual[] may not be held liable merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating that law." (cleaned up)). That is all Baptiste alleges here — namely, that Boudreau himself retaliated against her and, thus, that Boudreau was the principal violator. It follows that Boudreau cannot be held liable as an aider-and-abettor under the NYSHRL.[5]

Defendants seem to argue that the NYCHRL claim should be dismissed on the same basis. *See* Defs.' Mem 12-13; ECF No. 30 ("Defs.' Reply"), at 8-9. They concede, however, that "the NYCHRL permits actions against individuals for their own discriminatory acts regardless of whether they are employers or aid and abet others' discriminatory acts" and that Boudreau "can be held liable . . . under the individual liability provisions of the NYCHRL." Defs.' Mem. 12, 14; *see also* Defs.' Reply 9. And in any event, as the New York Court of Appeals made clear in *Doe*, Boudreau can be held liable for violating the NYCHRL even if he is not considered an "employer" under state law. *See Doe*, 36 N.Y.3d at 459 ("[Supervisors and administrators] may incur liability [under the NYCHRL] only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected

---

[5]  In light of that conclusion, the Court need not and does not wade into the debate over whether liability attaches to an individual aider-and-abettor if the primary violator is shielded by sovereign immunity. *See, e.g.*, *Bonafinni v. City Univ. of N.Y.*, No. 20-CV-5118 (BMC), 2021 WL 2895688, at *3 (E.D.N.Y. July 9, 2021) (citing a district court split on the issue and explaining that the "Second Circuit has not squarely addressed" it).

15

conduct."). Accordingly, Baptiste's retaliation claim against Boudreau under the NYCHRL survives.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. More specifically, the following claims must be and are DISMISSED:

(1) Baptiste's discrimination claims;

(2) Her Rehabilitation Act retaliation claim against Boudreau in his individual capacity;

(3) Her retaliation claim under the Equal Protection Clause; and

(4) Her NYSHRL retaliation claim.

Baptiste's other claims — namely, her retaliation claim under the Rehabilitation Act against CUNY and Boudreau in his official capacity, her retaliation claim under Section 1981, and her retaliation claim against Boudreau under the NYCHRL — survive.

Additionally, the Court declines to *sua sponte* grant Baptiste leave to amend her dismissed claims. Baptiste has neither sought leave to amend nor suggested that she possesses any additional facts that could cure the defects in her dismissed claims. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Baptiste was on notice of Defendants' arguments when she filed the Complaint in response to Defendants' original motion to dismiss, and she was expressly warned that she would "not be given any further opportunity" to amend the Complaint. *See* ECF No. 15. In light of these circumstances, the Court will not *sua sponte* grant leave to amend. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL

3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (cleaned up)).

Unless and until the Court orders otherwise, Defendants shall answer Baptiste's remaining claims **within two weeks of the date of this Opinion and Order**. In addition, the initial pretrial conference is reinstated and ADJOURNED to **August 2, 2023**, at **9:00 a.m.** The conference will be held remotely in accordance with the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman. The parties are reminded that, no later than the Thursday before the initial pretrial conference, they are required to submit a joint status letter and proposed Case Management Plan. *See* ECF No. 7.

The Clerk of Court is directed to terminate ECF No. 22.

SO ORDERED.

Dated: June 29, 2023
New York, New York

JESSE M. FURMAN
United States District Judge