# Exhibit F



**Toni Telles, Esq.**
toni@employeejustice.com
Direct: (856) 295-1365

December 21, 2023

*Via Electronic Mail*
Shaina Schwartz, Esq.
Assistant Attorney General
Attorney General of the State of New York
Email: Shaina.schwartz@ag.ny.gov

    Re:    *Baptiste v. City University of New York, et al.*
            Case No.: 1:22-cv-02785 (JMF)

Dear Ms. Schwartz,

    We write regarding Defendants' responses to Plaintiff's first set of discovery requests and Defendants' responses. A review of the same has revealed that Defendants' responses are grossly deficient. Kindly remedy the below deficiencies **by Friday, December 29, 2023** in order to avoid application to the Court. Please let this letter serve as our formal request to meet-and-confer per Judge Furman's Individual Rules and Practices.

I. **DEFENDANTS CANNOT REFUSE TO PRODUCE CURRENT HIGH-LEVEL EMPLOYEES FOR DEPOSITIONS WHILE CLAIMING TO REPRESENT THEM IN THEIR INITIAL DISCLOSURES.**

    First, we write regarding your email of December 18, 2023, in which, over two months after Defendants received our Notices to Depose Ms. Mozeleski and Ms. Coico on October 13, 2023, they refused to produce these individuals, claiming that they are not parties.

    As you are aware, Defendant CUNY is an entity, comprised of *individuals*. The fact that these fact-witnesses are not parties is entirely irrelevant and is simply another tactic Defendants are using to attempt to stall the present litigation and stonewall Plaintiff from pursuing her case.

Case 1:22-cv-02785-JMF   Document 47-6   Filed 01/25/24   Page 3 of 11

Baptiste v. City University of New York, et al.                                                    Page   2
December 21, 2023

It is appropriate in this circumstance to direct Defendants to Fed.R.Civ.P. 37(d), which provides in pertinent part:

> If a party or an officer, director or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.... In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Further, Fed.R.Civ.P. 37(d) "allows the imposition of sanctions against a party for especially serious disregard of the obligations imposed by the discovery rules even though it has not violated any court order." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291, at 714 (2d ed.1994). Therefore, when a party has been served with a notice of deposition, it is obliged to appear at the time and place designated in the notice and, if the party fails to do so, that party is subject to the specified sanctions. See Lee v. Walters, 172 F.R.D. 421, 428 (D.Or.1997).

Significantly, Rule 37(d) applies not only to parties but, for a corporation, to "an officer, director or managing agent ... or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a" corporation. PrecisionFlow Techs., Inc. v. CVD Equip. Corp., 198 F.R.D. 33, 36 (N.D.N.Y. 2000), aff'd, 140 F. Supp. 2d 195 (N.D.N.Y. 2001). In PrecisionFlow, the Plaintiff Corporation, very much like the Defendant in the present case, was served with deposition notices for its employees.  While the dates and times of the depositions were thereafter changed on several occasions in oral and written communications between counsel, PrecisionFlow never advised CVD that it would not produce the employees for deposition. In that case, the court imposed sanctions pursuant to the rule, explaining:

> . . . the conduct of PrecisionFlow and its counsel on October 18, 2000 was indefensible. In accordance with the usual practice in this district, CVD served notices for the depositions of nine employees of PrecisionFlow. The depositions were confirmed on numerous occasions between counsel for the parties. **On no occasion did PrecisionFlow ever object to the notices or advise CVD that it should serve subpoenas to obtain the attendance of the employees at the**

Case 1:22-cv-02785-JMF   Document 47-6   Filed 01/25/24   Page 4 of 11

Baptiste v. City University of New York, et al.                                                                Page 3
December 21, 2023

**depositions.** PrecisionFlow in fact assumed responsibility for and controlled the appearances of the employees.

Id. at 39.

In the present case, Ms. Mozeleski has knowledge of her long-standing relationship with Defendant Boudreau, as well as the reasons for her selection as Vice President Hill's replacement. Ms. Coico has knowledge of certain relevant information, including the actual circumstances surrounding Ms. Coico's abrupt separation from Defendant's employment. Moreover, these individuals were listed as people with knowledge of relevant information in Plaintiff's interrogatory responses. In fact, even Defendants listed Ms. Mozeleski in their discovery responses as a person with knowledge on "Plaintiff's performance as Chief Diversity Officer at CCNY, including but not limited to the investigation of CCNY's Office of Diversity and Compliance by OCR in or around in or around 2016-2017." Defendants have refused to provide Ms. Mozeleski's contact information, instead listing "Paul F. Occhiogrosso, Esq., Executive Counsel to the President City College of New York[.]" Consequently, because these witnesses have information which is material and necessary to Plaintiff's claims, we have a right to depose them. Arendt v. Gen. Elec. Co., 270 A.D.2d 622, 623, 704 N.Y.S.2d 346, 347 (2000) (where chief executive officer actually possessed necessary and relevant information germane to the lawsuit, he should be produced)(internal citations omitted). Further, because Defendants failed to object to the depositions notices until the 11th hour, and failed to provide the contact information for these witnesses, we are confident Judge Furman would agree that Defendants have assumed responsibility for them.

I note that your letter of November 30, 2023, regarding Plaintiff's 30(b)(6) deposition, Defendants take issue with topic numbers 3, 4, 5, 8, 14, 15, and 16. These topics include those relating to:

1) Removal of Lisa Coico as CUNY President (No. 3)—which is relevant to Defendants' attempt to dismantle the OD&I in order to strip Plaintiff of her allies and retaliate against those officers who did not acquiesce to Defendants campaign of discrimination and retaliation. Defendants claim this change was for legitimate, non-retaliatory reasons, Plaintiff has a right to test that defense.

2) The decision to appoint Boudreau as interim CUNY President (No. 4) and the decision to appoint Boudreau as permanent CUNY President (No. 5)—which are both directly relevant to Defendant CUNY's culpability in delegating unfettered authority to Defendant Boudreau, which he abused in order to retaliate against Plaintiff and other CUNY employees who disagreed with his discriminatory practices.

3) The search for and eventual hiring of Plaintiff's replacement after her termination, including any subsequent personnel changes to that position/title (No. 8)—which is relevant to Plaintiff's claims that Defendants' reason for her termination was pretext for retaliation.  To the extent Defendants claim Plaintiff's performance was a factor in her termination, the qualities, skill, and experience Defendants sought in her replacement are relevant to test Defendants' explanation that Plaintiff's performance was deficient.  Further, to the extent Defendants claim Plaintiff's termination was for financial reasons, and that Plaintiff's position was "downgraded," Plaintiff has a right to discover the scope of responsibilities included in this new position, as well as how Defendants concluded Ms. Light was the best candidate for Plaintiff's replacement.

4) The decision to terminate the employment of Dierdre Hill (No. 14), the decision to terminate the employment of Juana Reina (No. 15) and the decision to hire / install Celia Lloyd as an eventual replacement for Juana Reina (No. 16).—which is relevant to show Defendant Boudreau formally entrenched his repeated instances of discriminatory practices into Defendant CUNY's policy, by terminating people of color who supported Plaintiff's objective in eliminating discrimination and retaliation at CUNY.

Each of these topics relates to Defendants' discriminatory practices of "whitewashing" its administration and replacing racial and ethnic minorities with Caucasian individuals who are either not qualified to fill the position or are grossly underqualified. Plaintiff objected to these practices. Because Plaintiff's protected conduct is based upon the allegation that Defendants discriminated against several CUNY employees, and because Defendants deny the discrimination, these requests are relevant to the allegation that the conduct Plaintiff alleged occurred is true, giving Defendants a motive to retaliate against her.

Please either confirm your office will produce Ms. Mozeleski and Ms. Coico or provide their last known address, phone number and email address so that we may contact them.

## II. DEFENDANTS HAVE UNREASONABLY REFUSED TO PRODUCE ANY DOCUMENTS.

Defendants have failed to either identify or produce ***any*** documents in response to Plaintiff's demand, and instead repeatedly listed boilerplate objections and the statement that "Defendants will search for and produce, to the extent they exist and are located following a reasonable search, relevant, responsive, non-privileged communications regarding. . ." This is unacceptable and is in clear violation F.R.C.P. 34(b)(2)(A). When we raised this manifest failure, you responded by stating unspecified documents will be produced when "practicable." This

Case 1:22-cv-02785-JMF   Document 47-6   Filed 01/25/24   Page 6 of 11

Baptiste v. City University of New York, et al.                                                          Page   5
December 21, 2023

response is not only completely impracticable given the extraordinary delay, but also plainly unreasonable and smacks of an utter derogation of Defendants' obligation to search for and produce responsive documents in a timely manner. Please ***immediately*** identify and produce all responsive documents for, at minimum, Document Request Nos. 1 – 9, 12 –14, 17 –19, 21 – 30, 33, 36 –38, and 48.

## III. DEFENDANTS' SPECIFIC OBJECTIONS TO SEVERAL DOCUMENT REQUESTS AND INTERROGATORIES ARE IMPROPER AND MUST BE WITHDRAWN.

In addition to completely failing to produce even one single document in this case, Defendants have improperly raised numerous unsubstantiated objections which must be withdrawn. We address each of them below.

**Document Request No. 11**

This request seeks documents or communications which refer or relate to the Office of Diversity and Inclusion's ("OD&I") payroll during the relevant time period.  Contrary to Defendants' objections, as CUNY is a state entity, this information is neither sensitive nor confidential. What is more, the parties entered into a confidentiality order that prohibits dissemination of any sensitive material, even if Defendants' argument had any credibility.  Further, this request is plainly relevant because it directly confirms Plaintiff's Second Amended Complaint's allegations that Defendants' decision to cut the salaries of Plaintiff's staff in the Office of Diversity and Inclusion was retaliatory.  Defendants deny this allegation.  Plaintiff has a right to inspect the payroll during and after Plaintiff's tenure to rebut any legitimate, non-retaliatory reason for the cut.  Any increases in payroll after they fired Plaintiff, despite claiming it was a financial decision, is relevant to both Defendants' defenses and Plaintiff's claims.  Kindly produce these documents in order to avoid application to the Court.

**Document Request No. 20**

This request sought documents that refer or relate to CUNY's decision to promote Boudreau to interim-President and then President of CCNY. Defendants refused to provide this documentation. It is difficult to conceive of any plausible justification for withholding these documents, as promotion and demotion decisions of a defendant alleged to have committed ongoing and systemic discrimination and retaliation is clearly relevant. CUNY was plainly aware of Defendant Boudreau's discrimination and retaliation at the time he was promoted, as Lynda Dodd's initial complaint long pre-dated his promotion. Such documents are relevant to Defendant CUNY's culpability and liability.  Please produce these documents immediately in order to avoid application to the Court.

**Document Request Nos. 31, 32, 34 and 35**

In response to these requests, Defendant objected, claiming same is overbroad and unduly burdensome, not properly limited in time and scope and various other inappropriate objections, including that this request seeks information regarding claims which were dismissed by the Court. Contrary to Defendants' objections, documents regarding the replacements of Juana Reina and Deidre Hill—as well as documents regarding the naming and hiring of Diane Cuozzo—are quite relevant to the instant case, regardless of the Court's June 29, 2023 Order. Within the bounds of F.R.C.P. 26(b)(1), any evidence that Defendants engaged in racial discrimination by terminating these employees and replacing them with a Caucasian individual is relevant to whether Defendants had a motive to *retaliate* against Plaintiff. See Harris v. Bronx Parent Hous. Network, Inc., No. 18CV11681GBDSN, 2020 WL 763740, at *2–3 (S.D.N.Y. Feb. 14, 2020).

In Harris, the Plaintiff's claims included discrimination, but not retaliation. Defendant's application for a protective order pertained to Plaintiff's interrogatories, which requested "all retaliation complaints made against . . . [Defendant];" as well as "retaliation complaints or charges, whether formal or informal, made by any person against . . . [Defendant];" and "[a]ll Documents relating to any litigation – pending, threatened, or completed – concerning ... retaliation raised by any person against either . . . [Defendant]." Defendant argued that whether other employees filed claims of retaliation against Defendant is not relevant to the case, in which Plaintiff did not allege retaliation. The court found that other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination. Id. at *3. See also Vuona v. Merrill Lynch & Co., 10-cv-6529 (PAE), 2011 WL 5553709, at *7 (S.D.N.Y. Nov. 15, 2011). The court reasoned that, although Plaintiff did not claim retaliation, whether other employees had been retaliated against in connecting with disability discrimination was relevant to Plaintiff's claims. Importantly, the court noted that "**If a pattern of discrimination exists, it may show that Defendant's proffered reasons for its decision regarding Plaintiff is pretextual**." Harris v. Bronx Parent Hous. Network, Inc., No. 18CV11681GBDSN, 2020 WL 763740, at *3 (S.D.N.Y. Feb. 14, 2020). See also Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 204 (2d Cir. 2014) ("**Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive**.")(emphasis added) (quoting Hollander v. Am. Cyanamid Co., 895 F.2d 80, 84 (2d Cir. 1990)). In the present case, Plaintiff's claims include retaliation. Just as in Moll, any evidence that Defendants engaged in a pattern of discrimination is relevant to Defendant's motive to retaliate against Plaintiff, who objected to Defendants' practice of discrimination.

Case 1:22-cv-02785-JMF   Document 47-6   Filed 01/25/24   Page 8 of 11

Baptiste v. City University of New York, et al.                                                Page  7
December 21, 2023

**Document Request No. 39**

This request sought documents and electronically stored information concerning Defendants' policies, protocols, procedures and/or practices for the retention, destruction, backup and/or archiving of electronically stored information, including but not limited to, emails, written documents and/or other electronic communications.  Defendants objected, claiming the request was overbroad and irrelevant and refused to provide the information.  However, Defendants have an obligation to preserve all relevant information and documentation.  Further, this request is, in fact, relevant to the instant case, particularly because the balance of relevant documentation in this matter is in the custody and control of Defendants. By refusing to identify Defendants' policies for saving documents relevant to this litigation, Plaintiff is hindered in her ability to prosecute her case as the policies themselves will demonstrate whether or not Defendants have complied with their known obligations or whether clear spoliation exists.

**Interrogatory No. 5 and Document Request Nos. 40 & 41**

This interrogatory and these document requests seek the identity of other individuals who have complained of and/or filed Complaints in State or Federal Court regarding racial discrimination and/or retaliation (under the applicable statues and regulations, Section 504 of the Rehabilitation Act of 1973; 42 U.S.C. § 1983; 42 U.S.C. § 1981; the New York City Human Rights Law and Exec. L. § 296 et seq., and, Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law) against CUNY for the past 10 years.

The document requests seek documents regarding lawsuits or charges/complaints filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights and/or the New York City Division of Human Rights against Defendants, from June 1, 2013, to the present.  Defendant CUNY objected, claiming same violated Local Rule 33.3, that it is overbroad and unduly burdensome, not properly limited in time and scope and various other inappropriate objections, including that this interrogatory/request seeks information regarding claims which were dismissed by the Court and that the information is protected by the attorney-client privilege.

To begin with, Local Rule 33.3 provides, in pertinent part:

> (a) Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent

> insurance agreements, and other physical evidence, or information of a similar nature.
>
> (b) During discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court.

As Defendants are aware, Plaintiff's Second Amended Complaint alleges that she was retaliated against, in part, because she objected to Defendants' attempts to discriminate against both Ms. Dodd, based on her disability, and Mr. Rias, on the basis of his sexual orientation and race. Consequently, evidence of the underlying discrimination buttresses Plaintiff's retaliation allegations, as Defendants have denied these allegations. Indeed, Defendants deny discriminating and/or retaliating against Plaintiff, Ms. Dodd or Mr. Rias. Accordingly, the identity of other individuals with similar complaints against Defendants would tend to show Defendants' motives to retaliate against individuals who complain of discrimination or retaliation. See Littlejohn v. City of New York, 795 F.3d 297, 317 (2d Cir. 2015) ("protected activities are not limited to complaints involving discrimination against the complainant herself, but also extend to complaints of discrimination on behalf of other employees and complaints of discriminatory practices generally. . . ").

Further, in the Answer to the Second Amended Complaint, Defendants assert various affirmative defenses including the Tenth Affirmative Defense, in which Defendants claim they "acted in good faith compliance with all relevant statutory laws and deny that they ever acted in willful disregard of plaintiff's rights"; the Eleventh Affirmative Defense, in which Defendants boldly claim that "***All*** of the decisions made by Defendants, and ***any*** actions taken by same, were made for legitimate, nondiscriminatory, and nonretaliatory reasons"; and finally the Fifteenth Affirmative Defense, in which Defendant CUNY claims that it "has in place reasonable policies and procedures to handle discrimination and retaliation complaints." See Defendants' Answer to Second Amended Complaint, ECF No. 37. Defendants have put the efficacy of its anti-discrimination and retaliation policies "at issue," therefore it has waived any privilege which would pertain these documents, information and communications. See Parneros v. Barnes & Noble, Inc., 332 F.R.D. 482, 501 (S.D.N.Y. 2019) (quoting In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987), "the attorney-client privilege cannot at once be used as a shield and a sword. . . . Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." Id. (citations omitted)). Likewise, by putting forward a "good faith" defense, Defendants have further waived the privilege. See United States v. Bilzerian, 926 F.2d 1285, 1291-1293 (2d Cir. 1991).

Case 1:22-cv-02785-JMF   Document 47-6   Filed 01/25/24   Page 10 of 11

Baptiste v. City University of New York, et al.                                                                        Page   9
December 21, 2023

Plaintiff is entitled to test these defenses and discover just how reasonable and effective CUNY's "policies and procedures to handle discrimination and retaliation complaints" are. Plaintiff is further entitled to test Defendants claims that "all" of its decisions and "any" action taken was for legitimate nondiscriminatory/non retaliatory reasons. Additionally, the identity of other complainants may lead to relevant evidence regarding Defendants' motive to discriminate, which would support Plaintiff's claim that they discriminated against Ms. Dood and Mr. Rias and that Plaintiff's objections motivated Defendants to retaliate against her.

**Interrogatory No. 9:**

This interrogatory requests that Defendants identify individuals involved in DOE/DCR investigations into CUNY between 2015 and 2018. Defendants objected and instead of listing the individuals, simply stated that Defendants were represented by CUNY's Office of General Counsel. This is not sufficient. The parties entered into a Confidentiality agreement, so Defendants' objections on that basis have no merit. Further, the time period in question is not overbroad, as it encompasses both Plaintiff's and Defendant's Boudreau's employment. Please provide this information in the next seven (7) days in order to avoid application to the Court.

**Document Request No. 42:**

This request sought any sworn statements, including affidavits, declarations, and deposition testimony, of Defendant Boudreau, responding to, relating to, or referring to any lawsuits, administrative actions, investigations, or complaints concerning allegations of discrimination or retaliation under federal, New York state, or New York City municipal laws. While we believe *any* sworn testimony of Defendant Boudreau is relevant, we will agree to limit it to the past ten (10) years. Defendants' objections that these documents are somehow irrelevant or privileged are ludicrous. It strains credulity how sworn testimony Defendant Boudreau provided about accusations of discrimination or retaliation against Defendant Boudreau or Defendant CUNY during the time Plaintiff was employed at the OD&I is not relevant to a case involving accusations of discrimination or retaliation against him or Defendants CUNY involving the OD&I. Please produce these documents immediately.

**Document Request No. 43**

This request sought documents that refer or relate to any and all training, instruction, lessons, retraining, certifications obtained, or courses taken by Boudreau while at CUNY, pursuant to his employment at CUNY, regarding discrimination, harassment, retaliation and/or reasonable accommodation. Defendants have objected to this request as irrelevant and overbroad. To repeat, in their Fifteenth Affirmative Defense, Defendant CUNY claims that it "has in place reasonable policies and procedures to handle discrimination and retaliation complaints." Trainings and re-

Case 1:22-cv-02785-JMF   Document 47-6   Filed 01/25/24   Page 11 of 11

Baptiste v. City University of New York, et al.                                                                                   Page 10
December 21, 2023

trainings for Defendant Boudreau, pursuant to these policies, is directly relevant to both Plaintiff's claims and Defendants' defenses. To repeat, Defendants have put the efficacy of its anti-discrimination and retaliation policies "at issue," which includes any trainings or re-trainings given to Defendant Boudreau both before and after he was issued a Letter of Reprimand. Therefore, any privilege which would pertain these documents, information and communications have been waived by virtue of relying on their defenses. See Parneros v. Barnes & Noble, Inc., 332 F.R.D. 482, 501 (S.D.N.Y. 2019) (quoting In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987), "the attorney-client privilege cannot at once be used as a shield and a sword. . . . Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." Id. (citations omitted)).

If we do not receive compliant and complete amended responses and documents by **Friday, December 29, 2023**, or a request to meet-and-confer, we will promptly file a motion to compel along with any appropriate sanctions.

We await your prompt response.

                                        Respectfully,

                                        */s/Toni Telles*
                                        Toni Telles, Esq.