```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
MICHELE A. BAPTISTE,                                             :
                                                                 :
                              Plaintiff,                         :
                                                                 :       22-CV-2785 (JMF)
                -v-                                              :
                                                                 :       OPINION AND ORDER
THE CITY UNIVERSITY OF NEW YORK et al.,                          :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this case, Plaintiff Michele Baptiste, a former administrator at the City College of New York ("CCNY"), a senior college in the federally funded City University of New York ("CUNY") system, sues CCNY's president, Vincent Boudreau, and CUNY. In an earlier Opinion and Order, familiarity with which is assumed, the Court dismissed several claims pressed by Baptiste, including claims of discrimination. *See Baptiste v. City Univ. of N.Y.*, 680 F. Supp. 3d 415 (S.D.N.Y. 2023) (ECF No. 34). What remains are retaliation claims under the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794; Section 1981 of the Civil Rights Act of 1971 ("Section 1981"), 42 U.S.C. § 1981; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on these claims. *See* ECF No. 63. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

Before summarizing the relevant background, the Court must address one threshold matter: Defendants contention that the Court should "disregard[]" Baptiste's Local Civil Rule 56.1 Statement of Additional Facts, ECF No. 72 ("Pl.'s 56.1 Statement"), on the grounds that it

includes "64 paragraphs, many of which are lengthy, of purported additional facts," that "many of the additional facts Plaintiff purports to describe are not material to any genuine dispute in this case, in violation of Local Rule 56.1," and that it "is filled with arguments and conclusions, and often goes far beyond the presentation of alleged facts," *see* ECF No. 78 ("Def.'s 56.1 Reply"), at 1-3.  Ironically, Defendants make these arguments not in their reply memorandum of law or in a standalone motion to strike, but in their own filing pursuant to Local Civil Rule 56.1.  *See id.*  But in any event, courts in this Circuit "generally disfavor motions to strike" and "have discretion to decline to strike an improper 56.1 statement and consider only admissible evidence instead." *Allen v. Koenigsmann*, No. 23-CV-5651 (LAP), 2024 WL 403113, at *3 (S.D.N.Y. Feb. 2, 2024) (internal quotation marks omitted).  Thus, courts "frequently deny motions to strike paragraphs in Rule 56.1 statements, and instead simply disregard any improper assertions." *Id.* (cleaned up).

Following this approach, the Court disregards any portions of Baptiste's Statement of Additional Facts that do not present genuine issues of material fact or are unsupported or otherwise improper.  That said, in view of the Court's obligation to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004), "the Court . . . will undertake its own review of the record referenced by Plaintiff[] in an effort to determine whether that evidence is sufficient to raise a genuine question of material fact," *Emanuel v. Griffin*, No. 13-CV-1806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015).  Accordingly, and without regard for the parties' Local Civil Rule 56.1 Statements, the following facts are, unless otherwise noted, drawn from the undisputed material facts in the

record or described in the light most favorable to Baptiste.  *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

A. **The Parties**

CCNY is a senior college within CUNY, a federally funded university system in New York City.  Pl.s' 56.1 Statement ¶ 1.  Boudreau has been President of CCNY since December 4, 2017, and was Interim President for just over a year before that.  *Id.* ¶¶ 3-4.  From January 2014 through his appointment as Interim President, he served as Dean of the Colin Powell School for Civic and Global Leadership at CCNY.  *Id.* ¶ 5.  Baptiste was employed at CCNY as Dean of Diversity, Compliance, and Faculty Relations from June 2013 until her employment was terminated on April 26, 2018.  *Id.* ¶ 2.  Under the Terms and Conditions of her employment, Baptiste served "at the pleasure of the President."  *Id.* ¶¶ 6-7.  In her position, Baptiste was the head of CCNY's Office of Diversity and Compliance, which, among other things, was responsible for investigating internal complaints of discrimination and sexual misconduct.  *Id.* ¶ 9.  Indeed, one of Baptiste's principal roles as Dean was to oversee the investigation and resolution of internal discrimination complaints alleging discrimination based on race, ethnicity, gender, and disability, as well as complaints of sexual misconduct.  *Id.* ¶ 10.

B. **The Linda Dodd Complaint and Boudreau's Appointment as Interim President**

In or about March 2015, Linda Dodd — then an Associate Professor at CCNY — submitted a complaint to the Diversity Office, alleging discrimination and retaliation against three respondents, including then-Dean Boudreau.  *Id.* ¶ 14.  Baptiste investigated the allegations and, on May 21, 2015, issued a report setting forth her findings and recommendations.  *Id.* ¶¶ 15-16.  The report concluded that the evidence did not support the allegation that Boudreau discriminated against Dodd on the basis of disability, but it did substantiate the allegation that he

3

retaliated against Dodd following her reappointment in Spring 2015, although "there was no specific action that Dean Boudreau took against Prof. Dodd that constituted retaliation." *Id.* ¶¶ 19-21.  Baptiste recommended that Boudreau "receive a letter of discipline in his personnel file," and she composed a draft letter of reprimand for then-President Lisa Coico (to whom the report was addressed) to sign.  *Id.* ¶¶ 17, 22-23.  Neither Baptiste nor Boudreau ever saw a final, signed version of that letter.  *Id.* ¶ 24.  Coico resigned as CCNY President in October 2016, and Boudreau was appointed Interim President the following month.  *Id.* ¶¶ 26-27.  When Boudreau became Interim President in November 2016, Baptiste began reporting to him for the first time.  *Id.* ¶ 28.  Boudreau terminated other direct reports shortly after becoming Interim President, but he retained Baptiste in her role.  *Id.* ¶¶ 29-32.

C. **The Federal Investigations**

In late 2016, shortly after becoming Interim President, Boudreau learned that the Office for Civil Rights ("OCR") within the United States Department of Education was investigating allegations that the Diversity Office had not properly handled two complaints.  *Id.* ¶¶ 33-34.  The conduct OCR was evaluating took place in 2015 and 2016, while Baptiste was Dean of Diversity but before Boudreau became Interim President.  *Id.* ¶ 35.  OCR issued its findings and conclusions in a letter dated February 16, 2017, in which it concluded that the two investigations at issue were "not prompt," that the investigation into one complaint was "not adequate" because two students "who were identified as potential witnesses had not been interviewed," and that the investigation into the other complaint "was incomplete[] because the coordinator" — Baptiste — "did not make sufficient efforts to contact the [complainant] or interview students or others who might have knowledge pertinent to the complaint."  *Id.* ¶¶ 36-44 (cleaned up).  During the time

4

that all the conduct addressed in this first OCR decision occurred, Baptiste supervised all of the Diversity Office's employees.  *Id.* ¶ 46.

As a result of these determinations, OCR required CUNY to enter into a "Resolution Agreement," dated February 14, 2017, that directed CCNY to take certain specific remedial measures, including conducting supplemental investigations into the complaints at issue and conducting certain training regarding the handling of Title IX complaints.  *Id.* ¶¶ 47-48.  After the OCR decision, Boudreau and Baptiste discussed the OCR's findings, and Baptiste conducted the supplemental investigations that OCR required.  *Id.* ¶¶ 52-53.  The Resolution Agreement further required CCNY to "review all sexual harassment complaints filed during and since academic year 2015-2016, . . . to determine whether the College responded promptly and effectively to any alleged incidents of sexual harassment, of which it had notice, with action that was reasonably calculated to stop the harassment, prevent its recurrence, and as appropriate, remedy its effects."  *Id.* ¶ 49.  In March 2017, Boudreau asked Jennifer Light, then the Deputy Director of the Skadden, Arps Honors Program in Legal Studies, to conduct that review, which Light did over the following months.  *Id.* ¶¶ 54-55.  Light's review found additional problems affecting the investigations of several other sexual harassment complaints, including that additional follow up was needed with respect to fourteen sexual harassment complaints and that there had been incomplete or unrecorded reporting of investigation results to the parties with respect to five complaints.  *Id.* ¶¶ 56-58.

In the summer of 2017, Boudreau learned that OCR had opened yet another investigation into the Diversity Office's handling of a discrimination complaint.  *Id.* ¶ 59.  OCR issued its findings in a letter dated October 16, 2017.  *Id.* ¶ 60.  The letter noted that Baptiste had confirmed receipt of the complainant's original email when it was forwarded to her and agreed to

follow up, yet "neither [she], nor anyone else at the College thereafter took any action with respect to the complainant's email or otherwise followed-up on his concerns." *Id.* ¶¶ 61-63. OCR required CCNY to resolve the matters at issue in this second investigation by implementing another Resolution Agreement that required CCNY to take further remedial measures and report the results back to OCR. *Id.* ¶ 64. Baptiste received copies of the second OCR report and accompanying Resolution Agreement, and she was involved in implementing certain of the remedial measures required under that Agreement. *Id.* ¶ 65.

### D. The Tartter Investigation and Rias Complaint

On or about June 5, 2017, Dodd submitted to Baptiste a new discrimination complaint against another faculty member, Professor Vivien Tartter. *Id.* ¶ 66. Over eight months later, on February 16, 2018, Tartter emailed Boudreau regarding the status of this complaint, stating that she had "emailed [Baptiste] asking for progress, did so again in December and was told she was working on the report and it would be done before Xmas break," but "[s]ince then [had] neither received the report nor any response from her as to its progress, despite several inquiries." *Id.* ¶¶ 67-68. Tartter stated her "belie[f] that whatever the findings, taking 9 months to resolution is out of compliance with university dictates on affirmative action complaints. *Id.* ¶ 68.

Separately, in or about July 2017, Boudreau was informed that Curtis Rias — an information technology professional at CCNY — had filed a discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 70-71. In or about January 2018, the Human Resources Department at CCNY denied a request for a reasonable disability accommodation that Rias had previously submitted regarding where he was required to sit. *Id.* ¶¶ 75-76. Rias appealed that denial to the Diversity Office, at which point Baptiste first became directly involved in the consideration of Rias's accommodation request. *Id.* ¶¶ 78-79.

6

By letter dated August 6, 2018, Rias was notified that his request for a reasonable accommodation had been granted: "The President directed that, due to the new medical information you submitted on appeal, the Division of Human Resources arrange for your placement in a quieter, less noisy workspace, as soon as practicable." *Id.* ¶¶ 81-82.

**E. Dodd's Lawsuit, Baptiste's Termination, and This Lawsuit**

On December 20, 2017, Dodd filed a lawsuit in this Court, alleging, among other things, that Baptiste had "recommended . . . that Boudreau be given a 'letter of discipline.'" Docket No. 17-CV-9932 (PAE), ECF No. 1 (S.D.N.Y. Dec. 20, 2017), ¶ 64. On March 28, 2018, Dodd filed an Amended Complaint. *See id.* ECF No. 17. Boudreau terminated Baptiste's employment just under one month later, on April 26, 2018. Pl.'s 56.1 Statement ¶ 69. She filed this lawsuit on April 4, 2022, asserting several claims for discrimination and retaliation against CUNY and Boudreau, under federal, state, and local law. *See* ECF No. 18 ("SAC"), ¶¶ 130-195. On June 29, 2023, the Court granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint, allowing only Baptiste's claims for retaliation under the Rehabilitation Act, Section 1981, and the NYCHRL to proceed. *See Baptiste*, 680 F. Supp. 3d at 427-28. After discovery closed in March 2024, *see* ECF Nos. 39, 60, Defendants filed the instant motion for summary judgment on all of Baptiste's remaining claims. ECF No. 63; *see also* ECF No. 64 ("Defs.' Mem."); ECF No. 71 ("Pl.'s Opp'n"); ECF No. 77 ("Defs.' Reply").

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir 2012) (per curiam). Such a dispute qualifies as genuine "if the evidence is such that a reasonable

7

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford*, 391 F.3d at 83.

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters states." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

## DISCUSSION

Baptiste brings claims for retaliation under the Rehabilitation Act, Section 1981, and the NYCHRL. The Court begins with her federal retaliation claims.

### A. Federal Claims

Retaliation claims under the Rehabilitation Act and Section 1981 are governed by the familiar *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 246 (S.D.N.Y. 2020) (Rehabilitation Act); *Nieblas-Love v. New York City Housing Auth.*, 165 F. Supp. 3d 51, 69 (S.D.N.Y. 2016) (Section 1981). "First, the plaintiff must establish a *prima facie* case of retaliation. If the plaintiff succeeds, then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). At the summary judgment stage, "[i]f a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). More specifically, the plaintiff must identify evidence "that the desire to retaliate was the but-for cause of the challenged [adverse] action." *Ya-Chen Chen v. CUNY*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, (2013)); *see Natofsky v. City of New York*, 921 F.3d 337, 349-53 (2d Cir. 2019). "But-for" causation does not require a showing that retaliation was the sole motive — only that "the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Here, the Court is skeptical that Baptiste could even establish a prima facie case of retaliation because there is little or no evidence to support a finding of causation. Among other things, Baptiste relies principally on the "close proximity between Dodd's federal action" and her own termination to establish causation. Pl.'s Opp'n 10-12. But *Dodd's* lawsuit was not *Baptiste's* protected activity; indeed, there is no evidence in the record that Baptiste engaged in any activity related to Dodd that could constitute protected activity after 2015, *see* Pl.'s 56.1 Statement ¶¶ 14-24, which was *three years* before her termination. *See, e.g.*, *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N. Y. & Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 244-45 (S.D.N.Y. 2019) (rejecting a retaliation claim based on a letter submitted by the plaintiff's co-worker on the ground that the plaintiff failed "to allege or describe any engagement whatsoever that could constitute his *own* protected activity"). Notably, Baptiste's 2015 activity in connection with Dodd's complaint occurred only one year before Boudreau's appointment as Interim President, when he made the decision to retain Baptiste despite terminating other direct reports. *See* Pl.'s 56.1 Statement ¶¶ 28-32. Boudreau's decision to retain Baptiste then arguably undermines any inference that he retaliated against her later. *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2023 WL 4763257, at *6 (S.D.N.Y. July 26, 2023) (discussing the "'same-actor' inference"). Finally, Baptiste proffers no evidence that Boudreau was angry about her role in the Dodd affair — or that he had any cause to be. After all, Boudreau suffered no professional consequences from it; to the contrary, shortly thereafter, he was appointed Interim President, and then President.

But even assuming *arguendo* that Baptiste could establish a prima facie case, her federal retaliation claims would fail at the third stage of the burden-shifting analysis. For starters,

10

Baptiste does not meaningfully argue — and the Court does not find any record basis to conclude — that any act on the part of Defendants other than Baptiste's termination could independently give rise to a retaliation claim. *See* Defs.' Reply 10 n.10; Pl.'s Opp'n 12-21. And Defendants plainly meet their burden at the second stage of the retaliation inquiry, namely by offering evidence that Baptiste was terminated for poor performance — indeed, performance that was identified as inadequate by two federal investigations and subsequent follow-up inquiries. *See, e.g.*, Pl.'s 56.1 Statement ¶¶ 33-66; ECF No. 66 ("Boudreau Decl."), ¶¶ 45-50 ("I concluded that Plaintiff had demonstrated a clear pattern of failing to promptly address complaints that had been filed with the Diversity Office . . . . Plaintiff's deficient handling of the complaints addressed in the First and Second OCR Decisions . . . was not the only example of Plaintiff's poor performance. . . . Based on these performance deficiencies, I concluded that I needed to terminate Plaintiff's employment[.]"). Accordingly, "the presumption of retaliation is eliminated, and the plaintiff must meet her ultimate burden of proving 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Sivio v. Village Care Max*, 436 F. Supp. 3d 778, 799 (S.D.N.Y. 2020) (quoting *Nassar*, 570 U.S. at 352).

Baptiste fails to proffer "evidence that would be sufficient to permit a rational factfinder to conclude that [Defendants'] explanation is merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 721 (quoting *Cifra*, 252 F.3d at 216). She offers four arguments purporting to demonstrate pretext that go beyond her prima facie case: (1) that Boudreau "cut his meetings with Plaintiff against his own practices and against formal University Policy, only to reinstitute them after her termination to benefit her successor"; (2) that Boudreau "never gave Plaintiff any performance evaluations or indeed any feedback at all on any alleged 'performance issues,'"; (3) that "Defendants provided three separate justifications for their decision to terminate

11

Plaintiff"; and (4) that Boudreau "offered more resources to Plaintiff's department after her termination, directly contradicting their *first* reason for her termination." Pl.'s Opp'n 21-22. To be sure, proof of pretext "can include 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions,' such that 'a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.'" *Sivio*, 436 F. Supp. 3d at 799 (quoting *Zann Kwan*, 737 F.3d at 846). But Baptiste's arguments, even if supported, would not carry her burden of showing *both* that Defendants' explanations were pretextual *and* that retaliation was the but-for cause of her termination. *See, e.g.*, *Zann Kwan*, 737 F.3d at 845 (noting that a plaintiff must show that the defendant's proffered reason "is a mere pretext *for* retaliation" (emphasis added)). And in any event, the record does not support her arguments.

Baptiste's first argument — that Boudreau cut his meetings with her, only to reinstate them with her successor — does not support a finding of pretext because, among other things, she offers no evidence that her successor was in any way similarly situated to her. *Cf., e.g.*, *Natofsky*, 921 F.3d at 353 (noting that causation can be shown through "circumstantial evidence such as disparate treatment of fellow employees *who engaged in similar conduct*" (emphasis added)). Baptiste's second argument — that Boudreau never gave her performance evaluations or feedback — can also be swiftly rejected. For one thing, an employer's failure to mention an employee's deficiencies prior to termination does not, without more, establish unlawful purpose. *See, e.g.*, *Thomson v. Saatchi & Saatchi Holdings (USA), Inc.*, 958 F. Supp. 808, 822 (W.D.N.Y. 1997), *aff'd*, 159 F.3d 1348 (2d Cir. 1998). For another, the record makes clear that Boudreau *did* in fact discuss Baptiste's performance with her on several occasions. *See, e.g.*, Boudreau Decl. ¶ 29 ("[R]ather than immediately terminate Plaintiff's employment, I spoke with her about

12

the OCR's findings and the steps that could be taken to improve the Diversity Office's efforts to promptly respond to discrimination complaints."); Pl.'s Opp'n 4; Defs.' 56.1 Reply ¶ 133 (quoting portion of Boudreau's deposition in which he testified that he and Baptiste discussed "how we can improve the work of the office" and commenting that "if you're the head of that office, I imagined it was hard to take that question as anything but your performance is lacking and you've got to do something to make it better").

Baptiste's last two arguments depend on the notion that Defendants offered shifting explanations for the reasons behind her termination. In support of that notion, Baptiste cites minutes prepared by a third party from a union meeting at which Boudreau spoke and an email that Boudreau sent to CUNY faculty announcing her termination. *See* Pl.'s 56.1 Statement ¶¶ 140-41. But the meeting minutes are inadmissible hearsay, as Baptiste fails to lay a foundation that they are business records (or to cite another plausible exception to the prohibition on hearsay). *See, e.g.*, *Lopez v. MNAF Pizzeria, Inc.*, No. 18-CV-06033 (ALC), 2021 WL 1164336, at *7 (S.D.N.Y. Mar. 25, 2021) ("Business records are not admissible [on summary judgment] unless they are introduced in a manner that identifies them and establishes they are admissible pursuant to Federal Rule of Evidence 803(6), typically through a custodian's affidavit."). In any event, neither the minutes nor Boudreau's email would permit a reasonable finder of fact to conclude that Defendants offered inconsistent explanations giving rise to an inference of pretext. As Defendants observe, the note in the meeting minutes that resources of the Diversity Office "have been cut" was not related to the mention of Baptiste's termination, *see* Defs.' Reply 6-7; ECF No. 73-22 (union meeting minutes), and Boudreau's May 2, 2018 email merely announced that he had made a "change in leadership" and did not provide any particular reason for that change, *see* Defs.' Reply 7; ECF No. 73-23 (Boudreau email of May 2, 2018).

Beyond these unsupported assertions, Baptiste does not offer any evidence to meet her burden of demonstrating that a triable issue of fact exists as to whether Defendants' proffered justification for her termination was merely pretext for a hidden retaliatory motive. For that reason, her retaliation claims under the Rehabilitation Act and Section 1981 must be and are dismissed. *See, e.g.*, *Sivio*, 436 F. Supp. 3d at 801 (granting summary judgment dismissing retaliation claims where the plaintiff "points to no evidence in the record . . . that suggests a retaliatory relationship between her protected activity and her termination").

## B. NYCHRL Retaliation Claim

Having dismissed Baptiste's federal claims, the Court must decide whether to exercise supplemental jurisdiction over her retaliation claim under the NYCHRL. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. N. Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to . . . summary judgment . . . , courts should abstain from exercising pendent jurisdiction."

14

(internal quotation marks omitted) (citing cases)). Here, there is no reason to depart from that general rule. Claims under the NYCHRL "are subject to a different standard and must be analyzed separately" from federal claims. *Zenie v. Coll. of Mount Saint Vincent*, No. 18-CV-4659 (JMF), 2020 WL 5518144, at *8 (S.D.N.Y. Sept. 14, 2020). "In light of that, and because the law governing claims under the NYCHRL is still developing, [Baptiste's] NYCHRL claims present questions 'best left to the courts of the State of New York.'" *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017) (quoting *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001)), *aff'd sub nom. Nunez v. Lima*, 762 F. App'x 65 (2d Cir. 2019) (summary order). Accordingly, Baptiste's remaining NYCHRL retaliation claim is dismissed without prejudice to refiling in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Specifically, Baptiste's remaining federal claims are dismissed with prejudice and her remaining NYCHRL claim is dismissed without prejudice to refiling in state court. The Clerk of Court is directed to terminate ECF No. 63, to enter judgment for Defendants consistent with this Opinion and Order and the Court's June 29, 2023 Opinion and Order, ECF No. 34, and to close the case.

SO ORDERED.

Dated: December 9, 2024
      New York, New York

                                            JESSE M. FURMAN
                                            United States District Judge